Reed Zars
Utah Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6268
reed@zarslaw.com

George E. Hays
Attorney at Law
P.O. Box 843
Bellevue, WA 98009
(415) 716-9159
georgehays@mindspring.com
(Admitted pro hac vice)

Michelle Fein
Utah Bar No. 18065
50 W Broadway, Suite 333
PMB 49891
Salt Lake City, UT 84101
(610) 761-7643
michelle@fein.law

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON OF SALT LAKE CITY, LCC (d/b/a Harley-Davidson of Salt Lake City and South Valley Harley-Davidson Shop); NORTHERN UTAH POWER SPORTS, LLC (d/b/a Golden Spike Harley-Davidson and Saddleback Harley-Davidson); and JOSEPH L. TIMMONS, JR.,<br><br>Defendants. | **PLAINTIFF'S EXPEDITED MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.  2:22-cv-00473-DBB-DAO<br><br>Judge David B. Barlow<br><br>Magistrate Judge Daphne A. Oberg |

## I. INTRODUCTION AND RELIEF SOUGHT

Eighteen months ago, Plaintiff Utah Physicians for a Healthy Environment ("UPHE") notified Defendant-owners of four Harley Davidson dealerships in central Utah that UPHE intended to enforce the federal Clean Air Act's prohibition against their sale of aftermarket parts in motorcycles that defeat pollution emission controls.[1]  UPHE also put Defendants on notice that UPHE intended to enforce the  federal Noise Control Act's prohibition against

---

[1] See 42 U.S.C. § 7522(a)(3)(B); UPHE April 5, 2022 notice letter, ECF No. 2, Attachment 1; UPHE subsequent causes of action 4-6 in Complaint, ECF No. 2.

-1-

the dealerships using and causing the use of motorcycles without mandatory 80 decibel noise-limiting mufflers.[2] Nevertheless, in a recent inspection, UPHE discovered that Defendants are still selling such modified motorcycles. Accordingly, UPHE seeks a preliminary injunction to put a stop to such sales during the pendency of this action pursuant to Rules 7(b) and 65 of the Federal Rules of Civil Procedure.[3]

## II. FACTUAL BACKGROUND

Defendants are selling virtually hollow aftermarket exhaust pipes in used motorcycles that, because they have no federally-required, pollution-reducing catalytic converters, contribute disproportionately to the unhealthy air in the Wasatch Front.

Defendants are also causing the use of used motorcycles that emit noise at painful, unhealthy levels because their federally-required, 80 decibel noise-limiting mufflers similarly have been removed.

On July 11, 2023, pursuant to Rule 34(a)(2) and on behalf of UPHE, Dr. Michael St. Denis inspected 18 used or "pre-owned" motorcycles at Defendants' Salt Lake City Harley-Davidson dealership. Dr. St. Denis observed through visual inspection, aided by a fiber-optic scope, that ten of the motorcycles (over 55 percent) were being offered for sale with aftermarket exhaust systems containing no catalytic converters, and 14 of the motorcycles (over 75 percent) were being sold without 80 dB compliant exhaust systems. See table below. **Exhibit 1**, St. Denis Decl., ¶ 4.

---

[2] See 42 U.S.C. § 4909(a)(2)(B); UPHE April 5, 2022 notice letter, ECF No. 2, Attachment 1; UPHE causes of action 16-18 in Complaint, ECF No. 2.
[3] UPHE has attempted to resolve this issue with Defendants on multiple occasions, most recently on Monday, September 25, 2023, to no avail.

| Motorcycle | VIN | Aftermarket Exhaust manufacturer | Catalyst(s) Present? | Noise Label Present? | As of 7/11/23 | Defendants' Bates Number | As of 9/18/23 |
|---|---|---|---|---|---|---|---|
| 2022 Iron 883 XL883N | 1HD1JRV18EB052073 | Vance & Hines | No | No | For sale | 21118 | Sold |
| 2018 Road Glide FLTRU | 1HD1KGD11JB620869 | Aftermarket | No | No | For sale | 20329 | Sold |
| 2018 Street Bob FXBB | 1HD1YJJ10JC028714 | Vance & Hines | No | No | For sale | 18884 | Sold |
| 2016 Softail Slim FLSS | 1HDAJS913GB014545 | Vance & Hines | ? | No | For sale | 18720 | Sold |
| 2019 Heritage FLHC | 1HD1YAJ22KB016886 | Vance & Hines | No | No | For sale | 18757 | Sold |
| 2007 Fat Boy FLSTFI | 1HD1BX51X7Y092625 | Vance & Hines | No | No | For sale | 19437 | Sold |
| 2015 Ultra FLHTK | 1HD1KEL19FB688950 | Vance & Hines | Yes | No | For sale | 20866 | Sold |
| 2022 Heritage FLHCS | 1HD1YBK10NB050468 | Cobra | No | No | For sale | 19219 | Sold |
| 2021 Road Glide FLTRK | 1HD1KZF27MB666132 | Rinehart | Yes | No | For sale | 20663 | Sold |
| 2011 Softail FLSTN | 1HD1JD53XBB034514 | Aftermarket | No | No | For sale | 21076 | For sale |
| 2019 Road Glide FLTRU | 1HD1KGF15KB639617 | Rinehart | Yes | No | For sale | 21291 | For sale |
| 2019 H-D Deluxe FLDE | 1HD1YCJ27KB062709 | Cobra | No | No | For sale | 21127 | For sale |
| 2017 CVO Pro | 1HD1TG932HB953180 | Freedom | No | No | For sale | 21335 | For sale |
| 2016 H-D Forty-Eight XL1200X | 1HD1LC310GC413500 | Vance & Hines | No | No | For sale | 21209 | For sale |

Significantly, there was no noise control label on any of the aftermarket exhaust systems on the 14 motorcycles. All but one of those systems did not impede full-length examination by probe, indicating they allowed the direct flow of exhaust from beginning to end. On the other hand, of the four motorcycles with noise control labels the direct flow of exhaust was prevented by at least one blocking metal plate in their exhaust systems. **Exhibit 1**, St. Denis Decl., ¶¶ 3-4.

UPHE's inspection confirmed the continuation of Defendant Harley Davidson of Salt Lake City's admission last year that it has "repeatedly sold and/or installed aftermarket 'full' and 'slip-on' exhaust parts that do not have catalytic converters." Complaint ¶102, ECF No. 2; Answer ¶35, ECF No. 21. Defendants have also provided pictures and descriptions of the same motorcycles identified by Dr. St. Denis in table columns #1 and #2 that confirm Defendants' offers to sell these motorcycles, identified by Defendants' Bates numbers in column #7. **Exhibit 2**.

Since UPHE's inspection in July, Defendants have apparently sold at least nine (9) of the motorcycles with aftermarket exhaust systems absent catalytic converters or noise control labeled mufflers, or both, and continue to advertise for sale the other five (5) motorcycles with aftermarket exhaust systems missing either their original catalytic converters or noise-controlled mufflers, or both. **Exhibit 1,** St. Denis Decl., ¶ 4.

### III.  ARGUMENT

**A.     <u>Preliminary Injunction Standard.</u>**

Four factors must be shown by the movant to obtain a preliminary injunction: (1) the movant "is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009); *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

UPHE satisfies the four-part test for the issuance of a preliminary injunction as shown below.

**B.     <u>Success on the Merits.</u>**

UPHE is substantially likely to succeed on the merits of its CAA and NCA claims with respect to Defendants' sales of defeat parts in used motorcycles.

**(1)     Clean Air Act**

The purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

To fulfill that purpose the Clean Air Act prohibits the sale of motor vehicle "defeat parts" that result in the removal of pollution-reducing catalytic converters, including defeat parts that are sold alone or are included in the sale of a new or used vehicle.

Pursuant to 42 U.S.C. § 7522(a)(3)(B), "the following acts and the causing thereof are prohibited" –

> (3)(B) for any person to . . . sell . . . any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle . . . in compliance with regulations under this subchapter, and where the

person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

Defendants are "persons" within the meaning of 42 U.S.C. § 7602(e), and motorcycles are "motor vehicles" within the meaning of 42 U.S.C. § 7550(2); Answer, ¶¶ 83, 88 & 93, ECF No. 21. A catalytic converter is a device or element of design within the meaning of 42 U.S.C. § 7522(a)(3)(B), *U.S. v. Mac's Muffler Shop, Inc.,* 1986 WL 15443 at *6 (N.D. Ga. 1986).

(a) <u>Aftermarket defeat parts are prohibited in Defendants' used motorcycles</u>.

The sale of an aftermarket exhaust system installed in a used vehicle is prohibited by 42 U.S.C. § 7522(a)(3)(B) if the aftermarket exhaust system has removed a catalyst. *Utah Physicians for a Healthy Environment v. Diesel Power Gear LLC*, 21 F.4th 1229, 1252 (10th Cir. 2021), *see also*, *Utah Physicians for a Healthy Environment v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124 at 1140 (D. Utah 2019) ("Section 7522(a)(3)(B) prohibits by its plain language the sale of an emissions defeat part 'as part of' a vehicle where the seller knows or should know the part is being 'put to such use.'").

As the results of UPHE's July inspection show, Defendants have sold, and continue to sell, aftermarket defeat parts in used motorcycles that have resulted in the removal of the motorcycles' catalysts. **Exhibit 1**, ¶ 5.

(b) <u>A principal effect of the aftermarket defeat parts in Defendants' used motorcycles is to remove a catalytic converter</u>.

The hollow aftermarket exhaust systems subject to this motion have a principal effect of removing catalytic converters. This is because the only material difference between an original motorcycle exhaust system with a catalyst and a hollow aftermarket exhaust system without a catalyst is that the latter does not have a catalyst.

> (c) <u>Defendants know or should know when an aftermarket defeat part removes a catalyst</u>.

Finally, Defendants know or should know whether aftermarket exhaust pipes result in the removal of catalysts in the used Harley-Davidson motorcycles they sell. The existence and location of every catalytic converter originally installed in every Harley-Davidson motorcycle is shown in Defendants' parts and service manuals. https://serviceinfo.harley-davidson.com/sip/. Whether an aftermarket exhaust system includes a catalyst in a used motorcycle can be determined by a visual inspection. St. Denis Declaration, **Exhibit 1,** ¶ 3.

Further, Defendant Joseph Timmons, owner and manager of all four Defendant dealerships has an obligation under the responsible corporate officer doctrine to ensure he and his subordinates understand the law and act in full compliance with it. This doctrine holds active corporate officers "who execute the corporate mission" personally liable for violations of the CAA. "[The Clean Air Act] imposes not only a positive duty to seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure violations will not occur." H.R. REP. 95-294, at 1149 (1977); *Utah Physician for a Healthy Environment v. Diesel Power Gear*, 374 F.Supp.3d 1124, 1137-38 (D. Utah, 2019).

Defendant Timmons and his dealerships also know or should know if an aftermarket exhaust system removed a catalytic converter on the Harley-Davidson motorcycles they sell because they have been in business for decades, have the largest inventory of Harley-Davidson motorcycles in Utah, and include "full-service" shops staffed

by "a team of factory trained service technicians." **Exhibit 3**.

https://www.harleydavidsonofsaltlakecity.com/About-Us/Our-Dealership.

In sum, there is a substantial liklihood that UPHE will prevail on its claims that Defendants have sold, and continue to sell, defeat parts that Defendants know or should know have been used to remove catalytic converters in used motorcycles in violation of CAA § 7522(a)(3)(B).

**(2)    Noise Control Act**

After finding "that inadequately controlled noise presents a growing danger to the health and welfare of the Nation's population, particularly in urban areas," Congress passed the Noise Control Act ("NCA") to fulfill "the policy of the United States to promote an environment for all Americans free from noise that jeopardizes their health or welfare." 42 U.S.C. § 4901(a)(1) and (b).

To effectuate this policy, NCA § 4909(2)(B) prohibits the use of all post-1983 model year street motorcycles unless they have mufflers meeting the 80 dB standard as demonstrated by a permanent Noise Emission Control Information label ("noise control label") affixed to the muffler. UPHE's recent inspection of 18 used motorcycles at Defendants' Salt Lake City dealership showed that 14, or over 75 percent of the used motorcycles being offered for sale by Defendants did not have mufflers with a noise control label.

42 U.S.C. § 4909(2)(B) states,

> Except as otherwise provided in subsection (b), **the following acts or the causing thereof are prohibited**:
>
> (2)(A) The removal or rendering inoperative by any person other than for purposes of maintenance, repair, or replacement, of any device or element of design incorporated into any product in compliance with

>regulations under section 4905 of this title prior to its sale or delivery to the ultimate purchaser or while it is in use, or **(2)(B) the use of a product after such device or element of design has been removed or rendered inoperative by any person.**

(Emphasis added.)

A motorcycle is a "product" within the meaning of NCA § 4909(2)(B) because it is a "manufactured article or good[]" within the meaning of NCA § 4902(3). A muffler is a "device or element of design" within the meaning of NCA § 4909(2)(B).

Pursuant to 40 C.F.R. § 205 Subpart E, manufacturers of aftermarket motorcycle exhaust systems have two core duties: first, they must only manufacture exhaust systems that will not cause a motorcycle to exceed 80 dB as determined by the federal test procedure at Appendix I-1. 40 C.F.R. § 205.166(a)(1)(i), § 205.166 (b)(1)(i), and 40 C.F.R. § 205.168-1(a)(2). Second, they must state, on a permanent noise control label affixed to such systems, that their aftermarket exhaust systems meet the federal 80 dB noise standard. 40 C.F.R. § 205.169(a) through (e).

The regulations establish reciprocal presumptions. If a motorcycle is being used with a noise control labeled muffler the motorcycle is presumed to be no louder than 80 dB and therefore is lawful. If a motorcycle is being used without a noise control labeled muffler it is presumed to exceed 80 dB and is unlawful.[4]

---

[4] Salt Lake County Health Department's Regulation No. 21 relies on this presumption to control motorcycle noise with no other proof required. "No person may cause, allow, permit, or fail to control the operation or use of any motorcycle manufactured after December 31, 1982, without its required Motorcycle Noise Emission Control Label on the motorcycle vehicle itself in accordance with 40 CFR § 205.158 and on any motorcycle exhaust system as required by 40 CFR § 205.169. i." **Exhibit 4**.

As UPHE's inspection revealed, Defendants are "using" – by marketing and selling for a profit – used motorcycles from which NCA compliant mufflers have been removed. Defendants are also "causing to be used" – by selling to purchasers to drive – used motorcycles from which NCA compliant mufflers have been removed.

Thus there is also a substantial liklihood that UPHE will prevail on its claims that Defendants persist in using, and causing to be used, motorcycles from which their NCA compliant mufflers[5] have been removed.

**C.   Irreparable Injury.**

The excess air and noise emissions from Defendants' tampered motorcycles pose a health risk to UPHE members and the public at large that the Clean Air Act and Noise Control Act were passed to prevent.

It is well-established that harms to human health and the environment are irreparable. According to the Supreme Court,

> environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.

*Amoco Prod. Co. v. Village of Gambell, Ark.*, 480 U.S. 531, 545 (1987). The adverse impact to respiratory health caused by air pollution is a textbook example of irreparable harm. *Beame v. Friends of the Earth*, 434 U.S. 1310, 1314 (1977).

1.   Air Pollution Harms

When a catalytic converter is removed from a motorcycle's exhaust system and

---

[5] 40 C.F.R. §§ 205.152(a)(1) and 205.158(a).

replaced with a hollow pipe, emissions of hydrocarbons plus nitrogen oxides ("HC+NO$_x$") dramatically increase. According to EPA, modern motorcycles, when operated without catalytic converters, would be expected to exceed their federal HC+NO$_x$ emission limit by two times or more. **Exhibit 5**, "Control of Emissions from Highway Motorcycles," EPA Publication A420-R-03-015, December 2003, pp. ix and 4-10.

UPHE members experience adverse health effects from the air pollution that violates federal standards along the Wasatch Front – pollution caused in part by emissions from motor vehicles. *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1145 (D. Utah 2019)) (alteration in original).

According to UPHE member Dr. Kirtly Jones, a resident of Emigration Canyon, during periods of unhealthy air quality along the Wasatch Front "my throat is irritated and my eyes water." Dr. Jones' finds the air pollution "degrades my view of the mountains and sky and diminishes my enjoyment of Utah's beautiful scenery that makes Utah," and that when pollution levels of ozone and PM$_{2.5}$ exceed federal health standards "I am forced to limit my time outdoors." Dr. Jones concludes, "[t]he additional air and noise pollution emitted by motorcycles after their pollution control equipment has been removed creates an additional, unnecessary risk to my health and to the health of all Wasatch Front residents and visitors." **Exhibit 6.**[6]

---

[6] UPHE has been found to have the Constitutional and statutory standing in Utah to enforce the defeat part prohibitions in 42 U.S.C. § 7522(A)(3)(B) pursuant to 42 U.S.C. § 7604,. *Utah Physicians for a Healthy Environment v. Diesel Power Gear LLC*, 21 F.4th 1229, 1246 and 1252 (10th Cir. 2021); Utah Physicians for a Healthy Environment, Inc. v. TAP Worldwide, 582 F.Supp.3d 881; *Utah Physicians for a Healthy Environment v. Diesel Power Gear LLC*, 374 F.Supp.3d 1124, 1136 (D. Utah 2019).

2. Noise Pollution Harms.

According to EPA, the mean sound level for exhaust-modified motorcycles at 60 feet is 13.6 dB greater – or more than twice as loud[7] – than unmodified, 80 dB motorcycles. Regulatory Analysis for the Noise Emission Regulations for Motorcycles and Motorcycle Exhaust Systems, EPA Publication 550/9-80-217, December, 1980, pp. 5-7 to 5-10. **Exhibit 7**.

Bob MacFarlane, UPHE member, resident of Emigration Canyon, and owner of a stock motorcyle, is significantly harmed by loud motorcycles with aftermarket exhaust systems,

> The noise from motorcycles with aftermarket exhaust pipes, including Harley-Davidson motorcycles, is twice to four times as loud as my motorcycle. The roar from these heavily-modified machines can be heard at least half a mile away. The thundering noise trespasses into my property and into my home in Emigration Canyon. This noise disrupts my sleep and the sleep of members of my family including my college age daughter who suffers from insomnia.
>
> I sometimes ride my bicycle up the canyon, but the peaceful pleasure of pedaling in the canyon is shattered by the deafening noise from passing motorcycles with aftermarket exhaust systems. When a motorcycle with stock exhaust passes me I want to say, "thank you, you are welcome here."
>
> I am familiar with major makes of motorcycles, including Harley and Honda, and a number of the larger aftermarket manufacturers including Rinehart, Vance and Hines, Cobra and S&S. Based on my personal observations, knowledge and experience, a significant percentage of the Harley-Davidson motorcycles that are driven in Emigration Canyon have aftermarket exhausts, and they are the same ones that produce painfully loud noise. I am able to get a good view of these motorcycles as they pass our house, or are stopped at Emigration Brewing, Ruth's Diner or at the summit.

---

.
[7] "Loudness is measured on a logarithmic scale. This means that an increase of 10 decibels (dB) represents a 10-fold increase in sound intensity and a doubling of the perceived loudness." https://www.merckmanuals.com/home/multimedia/table/measurement-of-loudness#:~:text=Loudness%20is%20measured%20on%20a,doubling%20of%20the%20perceived%20loudness.

**Exhibit 8, ¶¶ 6, 10-11.**

Dr. Jones is also harmed by loud motorcycles, aggravating her tinnitus and waking her up at night and making it difficult to get back to sleep. In addition, Dr. Jones affirms,

> I often walk trails in the canyons near Salt Lake City. The roads near these trails are popular with motorcycle drivers. Some of these motorcycles are so loud they can be heard for hundreds of yards away from the road on the trail. It is upsetting to be on a walk to enjoy the outside in natural spaces and be overwhelmed by loud motorcycle noises that carry so far from the road.
>
> When I am driving or walking on the streets of Salt Lake City, a very loud motorcycle is startling. It is so loud, I cannot tell where the noise is coming from and where the motorcycle might be and I am worried for my safety as a driver, and as a pedestrian.
>
> When walking on the streets of Salt Lake City near the Public Library where I often go and sit in the plaza to talk with people, I have to stop a conversation and cover my ears until a very loud motorcycle, or group of motorcycles goes by.

**Exhibit 7**.

No amount of money can stop the distress of an asthma attack or the curse of tinnitus. Because the adverse impacts to health caused by the excessive air and noise pollution from motorcycles sold by Defendants with prohibited aftermarket exhaust systems cannot be remedied by money damages and are often permanent or at least long-lasting, they are by definition irreparable.

### D. <u>Balance of Harms</u>.

If a preliminary injunction were to issue that stopped Defendants from selling Clean Air Act defeat parts in pre-owned motorcycles and prohibited Defendants from using and/or causing the use of tampered motorcycles outlawed by the Noise Control Act during the pendency of this matter, the health benefits to UPHE would far outweigh any "harm" caused to Defendants by having to obey the law. It of course stands to reason that when the only hardship to a defendant caused by an injunction "is to prevent him from engaging

in further illegal activity," the "balance clearly weighs in Plaintiffs' favor." *DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601–02 (W.D.N.Y. 2011). Because Defendants have no right to engage in, or profit from, its illegal activities, the overwhelming weight of equities shifts to UPHE.

### E. Public Interest.

The 1977 amendments to the Clean Air Act took direct aim at stopping the aftermarket tampering of emission control devices to protect the public health:

> The Committee adopted [the anti-tampering provisions of the Clean Air Act] to assure that vehicle emission control systems will function as intended during the time the vehicle is in use.

H.R. Rep. No. 95–294, 95th Cong., 1st Sess. at 297-98, reprinted in 1977 U.S. Code Cong. & Adm. News 1376-77.

An injunction to enforce the Clean Air Act that will "likely result in decreased emissions and improved public health" does not harm the public interest; rather, it furthers it. *Sierra Club v. Franklin Cty. Power of Ill., LLC*, 546 F3d 918, 936–37 (7th Cir. 2008). Such relief represents "the most basic premise of Congress' environmental laws: the public interest is best served when the law is followed." *Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006).

Simply stated, an injunction that stops Defendants' sales of used motorcycles with prohibited air and noise defeat parts during the pendency of this case would be in the public interest.

### III.  CONCLUSION

Having demonstrated the four prerequisites to its motion, the liklihood of success, irreparable harm, the balance of harms and the public interest, UPHE respectfully requests the court issue a preliminary injunction against Defendants in the form and substance of the proposed order that accompanies this motion.

DATED this  28th day of September, 2023.

Respectfully submitted,

 /s Reed Zars
Reed Zars
Utah Bar No. 16351
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6268
reed@zarslaw.com


 /s George Hayes
George E. Hays
Attorney at Law
P.O. Box 843
Bellevue, WA 98009
(415) 716-9159
georgehays@mindspring.com
(Admitted pro hac vice)